## BALTIMORE & O. R. CO. v. BALDWIN.

(Circuit Court of Appeals, Sixth Circuit.   March 16, 1906.)

No. 1,481.

1. DEATH—ACTION FOR WRONGFUL DEATH—RIGHT OF ALIENS TO REMEDY.

The Ohio statute, as construed by the Supreme Court of the state, gives a right of action for wrongful death, although the person killed and his next of kin were all aliens.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 37.]

2. MASTER AND SERVANT—INJURY TO SERVANT—TRIAL—QUESTIONS FOR JURY —CONFLICT OF EVIDENCE.

Where the foreman of a track repairing crew and other witnesses all of whom were unimpeached and apparently credible, testified positively that warning was given by the foreman of the approach of an engine by which plaintiff's intestate, one of the crew, was killed, the testimony of other witnesses merely that they did not hear such warning although in position where they might have heard it did not create a conflict of evidence which authorized the submission of the issue to the jury.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 268; vol. 20, Cent. Dig. Evidence, §§ 2432–2435; vol. 34, Cent. Dig. Master and Servant, § 1033; vol. 41, Cent. Dig. Railroads, §§ 1161, 1373; vol. 46, Cent. Dig. Trial, §§ 342, 343.]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

George F. Arrel, for plaintiff in error.

W. H. Boyd, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   This is an action brought by Baldwin, the defendant in error, as administrator of Francesco Visci to recover damages for the benefit of the widow and children of the deceased resulting to them from his death, which it is alleged was occasioned by the negligence of the defendant below, the Baltimore & Ohio Railroad Company.   Visci was an Italian, who had come to this country some two years before the accident which caused his death, and his citizenship had not been changed.   He left a widow and three young children in Italy.   For four or five months prior to the accident he had been in the employment of the Baltimore & Ohio Railroad Company.   On the day of the accident, he was one of a train crew occupied in bringing slag and depositing it upon the company's track to raise or ballast the road bed at Leavittsburg, Ohio.   The crew was working under the direction of a foreman named Andrew Preto.   The slag was partly frozen, and did not run out freely through the gates at the side of the car when it was being unloaded.   As was the custom in such circumstances, the engine on this occasion was detached from the cars, run ahead, and then back, "bumping" the cars and shaking the slag out.   Visci was on one of the cars at work with a shovel.   It was customary for the foreman to warn the men on or about the train, before the engine

bumped the cars, to look out and take care of themselves. Whether the bumping that did the mischief was the third, second or first is not certain; probably it was the third. The blow was a severe one, and when it was delivered Visci fell off the end of the car and was run over and killed. It was alleged in the petition that the foreman gave no warning that the engine was about to bump the train, and this was the only negligence relied upon at the trial. There was a verdict and judgment for the plaintiff.

Two questions are presented. First, does the statute of Ohio giving the next of kin a remedy for wrongfully causing death extend to a case where the decedent and next of kin are all of them aliens? This ground of defense was taken by counsel at the trial and was overruled, and an exception to the ruling was allowed. There is no exclusion by express language in the statute, but it is argued that the exclusion should be implied, because, as it is supposed, the Legislature would have no motive to give such a remedy to aliens, and the remedy not being one given by the general law, the presumption should be that the Legislature was legislating for the benefit of its own people only. We think, however, that the construction of such statutes in other jurisdictions has generally been more liberal, and that they have been held not to exclude aliens from the remedy, in the absence of language plainly having that meaning. But a recent decision of the Supreme Court of the state, Pittsburg, C. C. & St. L. Ry. v. Naylor, Administrator of Marino, 76 N. E. 505, has settled the construction of the statute of Ohio against the contention of the plaintiff in error, by holding that aliens are included in its provisions. We accept this construction and overrule the assignment of error which challenges the ruling of the court below upon this question. Second. At the close of the evidence, which, as we have said, was limited to the issue as to whether the foreman gave warning to the deceased workman that the engine was about to bump the cars, before the blow which proved fatal was delivered, counsel for the defendant (below) moved the court for a peremptory instruction to the jury to render a verdict for that party. The motion was denied, and an exception taken. It is contended that there was in fact no conflict in the evidence, which was to the effect that such warning was given. The state of the record upon this subject is, shortly, this. It appears that some of the witnesses who were present at the time of the accident, among them the foreman, Petro, testified positively, Petro that he gave the warning, and the others that they heard it. An at least equal number, who were not quite so favorably situated for observation, but still could probably have heard it, if it was given, testified that they heard no warning given. The question is therefore presented whether in these circumstances there was such a conflict in the evidence upon the issue to which the trial was limited as to justify the court in submitting the case to the jury.

The question is not a new one, but it has not often been presented in a shape so simple. The trend of decision seems to be that negative testimony given by witnesses who do not state, or when

the circumstances fail to indicate, that they were giving attention and observed at the time that the fact or event did not occur, is not in conflict with positive testimony of witnesses who were present and had equal opportunities for observing, that it did occur. We are to be understood as stating a general rule. Peculiar circumstances may exist which would prevent its application, as for instance, when the witness giving the positive testimony is not worthy of credit, or his testimony is itself unreasonable and not credible. But when the conditions are normal, the rule is quite generally applied. In Mt. Adams, etc., R. R. Co. v. Lowery, 74 Fed. 643, 20 C. C. A. 596; Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 24 C. C. A. 305, and Minahan v. Grand Trunk W. Ry. Co. (C. C. A.) 138 Fed. 37, it was held by this court that when there is a substantial conflict in the evidence, the question of fact must be submitted to the jury. But in Horn v. Baltimore & O. R. R. Co., 54 Fed. 301, 4 C. C. A. 346, this court also held that the testimony of credible witnesses that they heard the whistle and bell of an engine was not in conflict with the testimony of others that they did not hear them. And it was observed by Judge Swan, who delivered the opinion of the court, after referring to the testimony of certain witnesses and saying that there was nothing in the record to discredit them, that:

"In the very nature of things, their affirmative testimony that the warning was given must be accepted as proof of that fact, notwithstanding an equal or greater number of witnesses failed to notice it, from whatever cause. There is in such cases no conflict of evidence as to the matter in question. The observation of the fact by some is entirely consistent with the failure of others to observe it, or their forgetfulness of its occurrence."

And in Chesapeake & O. Ry. Co. v. Steele, 84 Fed. 93, 98, 29 C. C. A. 81, 86, where a question arose whether a warning signal was given, the rule was recognized. But it was held that there was a conflict in the evidence, because some of the witnesses, who were watching the movement of the train, testified positively that no warning was given. Judge Lurton in delivering the opinion of the court, said:

"It cannot be safely said that there was not some substantial evidence tending to show that no warning was given other than the alarm sounded when the deceased was in the act of crossing. The evidence for the defendants in error amounted to something more affirmative than a mere statement by witnesses, who might have heard, that they did not hear. One or more of the witnesses for defendant in error were attentive to the movements of the train, and were able to say that no signal other than the alarm signal was given on that occasion."

In that case the contention of the plaintiff in error was that there was no evidence to the effect that the proper signals were not given which made it proper to submit that question to the jury, and the treatment of the question by the court shows clearly that it took for granted the general rule, but denied its application for the reason stated. It is evident that in both these last cited cases the question was regarded as one wherein there was a conflict of evidence, and not as one which regarded the comparative weight of testimony. And this seems to us to be the correct view of the subject. The cases are

very numerous in which it has been held that it is error in matter of law for the court to disregard the rule when it is invoked. And the rule that when there is a substantial conflict in the evidence the issue must be submitted to the jury is everywhere acknowledged. The result must be that purely negative testimony is not substantive, and amounts at most to nothing more than a mere scintilla. It would be a tedious task to canvass the cases, state and federal, in which the rule in question has been stated and applied or disallowed because of circumstances which affected its application. We note some of the more recent decisions of the federal courts in addition to our own. Stitt v. Huidekoper, 17 Wall. 384, 21 L. Ed. 644; Cable v. Paine & Co. (C. C.) 8 Fed. 788, citing 1 Starkie on Ev. 578; The Thingvalla, 1 U. S. App. 32, 48 Fed. 764, 1 C. C. A. 87; The Michigan, 25 U. S. App. 1, 63 Fed. 280, 11 C. C. A. 187; The Charlotte (D. C.) 124 Fed. 989; Chicago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 339.

A great number of cases are collected in 17 Cyc., at page 800 et seq., where the subject is discussed, and the rule with its modifications is stated substantially as we have stated it.

It follows from what we have said that upon the evidence given at the trial the court erred in not giving the instruction to find a verdict for the defendant.

The judgment should be reversed, and a new trial awarded.